UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE CRUMP,<br><br>                Plaintiff,<br><br>v.<br><br>CAPTAIN S. SANCHEZ, DR. WILLIAMS, OFFICER R. DAVIS, AND A. NANQUIL,<br><br>                Defendants. | Case No. 14CV1296-CAB(BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES [ECF No. 30] AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT [ECF No. 36]**<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION TO BE TEMPORARILY TRANSFERRED TO ANOTHER INSTITUTION [ECF No. 43], (2) GRANTING PLAINTIFF'S REQUEST FOR COPY OF CIVIL COURT DOCKET OF PLAINTIFF'S CIVIL COMPLAINT AND DOCUMENTARY EVIDENCE [ECF No. 49], (3) GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY [ECF No. 52], (4) DENYING PLAINTIFF'S REQUEST TO SUBPOENA WITNESSES FOR TRIAL FOR CIVIL JUDICIAL PROCEEDINGS [ECF No. 56], AND (5) DENYING PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL [ECF No. 61]** |

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Leave to Amend be **DENIED**.

## I.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 30]

### PROCEDURAL BACKGROUND

Plaintiff Steve Crump, a state prisoner proceeding *pro se* and *in forma pauperis*, initiated this action on May 20, 2014 when he filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants Captain S. Sanchez, Dr. Williams, and Officer R. Davis alleging that they violated his civil rights by denying him access to mental health care services, specifically a single cell.  ECF No. 1.  On June 4, 2014, Plaintiff filed a First Amended Complaint against Defendants Captain S. Sanchez, Dr. Williams, Officer R. Davis, and A. Nanquil adding a second allegation that the defendants retaliated against him for his insistence on a single-cell and for filing a civil suit against staff.  ECF No. 10 ("FAC").  Plaintiff seeks injunctive relief and monetary damages.  FAC at 7.

On July 14, 2014, Judge Bencivengo issued an order dismissing Plaintiff's Eighth Amendment claims relating to his request for single cell housing on the grounds that Plaintiff failed to state a claim upon which relief could be granted.  ECF No. 19.  In that order, Judge Bencivengo notified Plaintiff of the specific deficiencies in his claims and gave Plaintiff the option of either filing a Second Amended Complaint correcting the problems associated with his Eighth Amendment claims or notifying the Court that he intended to proceed only on his retaliation claims.  Id. at 5-6.  On August 11, 2014, Plaintiff filed a motion to proceed "as to the retaliation claims only" as described in his FAC.  ECF No. 21.  On August 25, 2014, the Court issued an order grating Plaintiff's motion to proceed on the retaliation claims and dismissing all other claims contained in the FAC.  ECF No. 24 at 2.

On December 19, 2014, Defendants filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.  ECF Nos. 30 and 30-1 ("MSJ").  On December

14CV1296-CAB(BLM)

19, 2014, the Court issued an "Order Providing Plaintiff Notice of Defendants' Motion for Summary Judgment Re Failure to Exhaust Administrative Remedies" in which the Court advised Plaintiff of the requirements for opposing Defendants' summary judgment motion. ECF No. 31.  The Court ordered Plaintiff to file his opposition to Defendants' motion on or before February 4, 2015 and Defendants to file their reply to the opposition on or before February 11, 2015.  Id. at 3.

Plaintiff filed his opposition on December 22, 2014, arguing that his FAC properly states a claim for retaliation.  ECF No. 32 at 6-9.  While Plaintiff did not specifically discuss the exhaustion of his retaliation claims, he attached a three page Inmate Appeal form (Form 602) dated October 15, 2014.  Id. at 13-15.  On December 28, 2014, Plaintiff filed a second opposition, which was very similar to the first opposition but included the following language in the "Background" section:

> Plaintiff also alleged that he submitted administrative appeals to RJDCF but had received no response concerning the incident between Captain Sanchez, Counselor Nanquil, and himself.  Therefore, Plaintiff alleges he submitted all reasonably available documentation and demonstrated good efforts to file and exhaust administrative remedies.

ECF No. 34 at 3.  On January 13, 2015, Plaintiff filed a document entitled "First Amended Complaint" which the Court has construed as a motion to file an amended complaint.  ECF No. 36.  This document identifies two First Amendment claims but does not address the exhaustion of administrative remedies or provide any attachments.  Id.  On January 16, 2015, Plaintiff filed a third opposition to the MSJ, which appears to be identical to the second opposition filed on December 28, 2014.  ECF No. 37.  This document does not contain any additional argument or facts relating to the exhaustion of administrative remedies.  Id.

On January 26, 2015, Plaintiff filed a "motion for extension of time to submit supporting documents of evidence exhausting administrative remedies."  ECF No. 39.  Although Plaintiff already had filed three oppositions, the Court granted Plaintiff's motion and ordered him to file any final supporting evidence on or before February 11, 2015.  ECF No. 41.  On February 2, 2015, Plaintiff filed a "Motion of Supporting Documents Showing

1   Plaintiff Exhausted Administrative Remedies," which contains several exhibits.  ECF No. 44.

2   Defendants filed a timely reply on February 11, 2015.  ECF No. 45.

3   In January, February, and March, 2015, Plaintiff filed a number of additional

4   pleadings and motions.  See e.g., ECF Nos. 43, 46, 47, 49 and 56.  Defendants also filed

5   a motion, which Plaintiff opposed.  ECF Nos. 52 and 57.  These motions and pleadings did

6   not address the exhaustion of administrative remedies at issue in the motion for summary

7   judgment and the Court will address these motions at the conclusion of this Report and

8   Recommendation.

9   **FACTUAL BACKGROUND**

10   In his FAC, Plaintiff alleges that in 2005, as a result of his mental health issues, Dr.

11   Coo at San Quentin State Institution gave him a "chrono" that stated "recommend for

12   single cell status due to significant paranoia and safety fears."  FAC at 3.  Plaintiff states

13   that he "has had a difficult time trying to get his single-cell chrono renewed and updated

14   in his mental health medical records by both San Quentin and Donovan Correction Facility."

15   Id.  Plaintiff asserts that he "has made numerous attempts through filing grievances" and

16   other methods to obtain his single-cell status.  Id. at 3-4.  Plaintiff claims that he was given

17   temporary single-cell status but argues that "facility captain [Defendant] S. Sanchez and

18   correctional counselor, [Defendant] A. Nanquil believes differently."  Id. at 4.

19   Plaintiff asserts that he attended a meeting with the "classification committee" on

20   June 3, 2014 at Donovan and during this meeting, Defendants Sanchez and Nanquil

21   informed Plaintiff that they were unhappy with him for naming them as defendants in his

22   civil lawsuit.  Id.  Plaintiff alleges that Defendant Sanchez then threatened to revoke

23   Plaintiff's single cell status and house him with a prisoner who was a gang member.  Id.

24   at 4-5. Plaintiff also claims that he was threatened by Defendant Davis who told him that

25   "if he refused to go into a cell with another inmate that he would be placed in Ad-Seg."

26   Id. at 5.  Finally, Plaintiff alleges that Defendant Williams (psychiatrist) neglected her

27   responsibilities by failing to ensure that Plaintiff's mental health needs were being properly

28

handled[1].  Id.  Plaintiff states that he "presently fears for his life and safety and believes his welfare is in imminent danger" at Donovan as a result of the threats made by Defendants Sanchez and Nanquil.  Id.

## LEGAL STANDARD

### A.    Exhaustion Under The Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") of 1995 provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits."  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The United States Supreme Court has confirmed that exhaustion is a mandatory prerequisite to filing suit in federal court.  Id.  However, the prisoner is not required to specially plead or demonstrate exhaustion in his or her complaint because failure to exhaust is an affirmative defense under the PLRA.  Jones v. Bock, 549 U.S. 199, 216 (2007).

The proper vehicle for challenging a complaint based on failure to exhaust administrative remedies is a motion for summary judgment under Federal Rule of Civil Procedure ("FRCP") 56 .  Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014) (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) which held that the proper procedural device for defendants to raise an exhaustion defense was an unenumerated FRCP 12(b)(6) motion to dismiss).  "If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice."  Wells v. Kyte, 2014 WL 3058361, *2 (E.D. Cal. July 3, 2014)(citing Wyatt, 315 F.3d at 1120, overruled on other grounds by Albino, 747 F.3d 1162).

Failure to exhaust may not be waived.  See Woodford v. Ngo, 548 U.S. 81, 85

---

[1]This claim for failure to provide medical care is no longer at issue since Plaintiff is proceeding only on his claims of retaliation.  ECF Nos. 21 & 24.  Plaintiff's FAC does not contain any additional facts indicating what, if anything, Defendant Williams did that constituted retaliation.

(2006) ("[e]xhaustion is no longer left to the discretion of the district court").  The United States Supreme Court has stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones, 549 U.S. at 211.  A prisoner cannot satisfy the PLRA's exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Woodford, 548 U.S. at 83-84.  Nor can a prisoner who did not make any attempt to utilize the prison grievance system sidestep the exhaustion requirement by arguing that it now would be futile to attempt to exhaust within the prison system.  Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("we stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); see also Woodford, 548 U.S. at 100 ("if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court").

The California Department of Corrections and Rehabilitation ("CDCR") utilizes a multi-step grievance process for prisoners seeking review of an administrative decision or perceived mistreatment.  Cal. Code Regs. tit. 15, §§ 3084.1-3084.9.  First, an inmate wishing to exhaust his or her remedies must fill out and submit a complaint form (generally referred to as a "602" form) and supporting documents.  15 C.C.R. § 3084.2.  The appeal will then be submitted and screened at the first level of review.[2]  15 C.C.R. § 3084.7.  If the appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," the inmate will need to file for and receive a second level decision.  Id.  If relief is not granted at the second level, the inmate will need to file for and receive a third level decision.  Id.  An inmate must submit his or her appeal "within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed."  15 C.C.R. § 3084.8.

---

[2]Unless the first level of review is exempted.  15 C.C.R. § 3084.7(a).  An appeals coordinator "may bypass the first level of appeal of (1) A policy, procedure or regulation implemented by the department. (2) A policy or procedure implemented by the institution head. (3) An issue that cannot be resolved at the division head level such as Associate Warden, Associate Regional Parole Administrator, CALPIA manager or equivalent. (4) Serious disciplinary infractions."  15 C.C.R. § 3084.7(a)(1-4).

"Only after the administrative process ends and leaves his grievances unredressed" may the inmate initiate litigation in federal court. <u>Vaden v. Summerhill</u>, 449 F.3d 1047, 1051 (9th Cir. 2006). "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 ..., and addressed through all required levels of administrative review up to and including the third level." 15 C.C.R. § 3084.1(b).

## B.   Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. <u>Id.</u> at 322-24. The opposing party "may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). In cases where the defendant is moving for summary judgment for plaintiff's failure to exhaust administrative remedies, the Ninth Circuit has held that

> the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. *See id.* ("[T]he respondent ... must show that domestic remedies exist that the claimant did not use."). Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *See id.* ("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."). However, as required by *Jones*, the ultimate burden of proof remains with the defendant.

<u>Albino</u>, 747 F.3d at 1172.

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255.

14CV1296-CAB(BLM)

1   Furthermore, in order to avoid summary judgment, the opposing party cannot rest solely

2   on conclusory allegations of fact. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).

3   Instead, the nonmovant must designate which specific facts show that there is a genuine

4   issue for trial. Id.; Anderson, 477 U.S. at 256.

5                                          **DISCUSSION**

6           Defendants argue that Plaintiff's complaint should be dismissed because Plaintiff

7   failed to exhaust his administrative remedies prior to filing his lawsuit. MSJ. Defendants

8   acknowledge that Plaintiff submitted medical appeals at both San Quentin State Prison

9   ("SQSP") and R.J. Donovan Correctional Facility ("RJDCF"), but note that none of those

10  appeals alleged retaliation by any of the Defendants. Id. at 9. Defendants admit that

11  Plaintiff submitted three grievances alleging retaliation by Defendants but argue that

12  Plaintiff failed to follow through with those appeals and exhaust his administrative

13  remedies. Id. at 9, 14-15. Finally, Defendants contend that Plaintiff's exhaustion of his

14  appeal for single cell status does not exhaust his retaliation claim and note that the prison

15  appeals system was available to Plaintiff. Id. at 15-16. Defendants submit six declarations

16  and substantial evidence in support of their motion. ECF Nos. 30-3-30-8, Declarations in

17  Support of Defendants' MSJ.

18          Plaintiff's written opposition to the MSJ focuses on the merits of his retaliation claim

19  and merely states that he "demonstrated good efforts to file and exhaust administrative

20  remedies." ECF No. 32 at 3-9; see also ECF Nos. 34 & 37. Plaintiff's evidence relating to

21  the exhaustion of his administrative remedies consists of 1) a letter from California

22  Correctional Health Care Services dated May 22, 2014, in which Plaintiff is reminded that

23  RJDCF denied his request for single-cell housing, his CDCR 602 forms dated February 28,

24  2014 are returned to him, and he is advised that if he wishes to appeal that determination,

25  he should pursue the inmate appeal process at RJDCF [ECF No. 10 at 8], 2) a letter from

26  California Correctional Health Care Services dated August 22, 2014, stating that Petitioner's

27  request for "a single cell chrono based on safety and paranoia issues" is denied at the

28  Director's Level and therefore his administrative remedies are exhausted, with the lower

level requests [ECF No. 44 at 5-11], and 3) an "emergency appeal" submitted on a 602 Form dated October 15, 2014, in which Plaintiff states he wants "to have my single cell chrono renewed and to have staff stop using threats of harm against me" [ECF No. 32 at 13-15].

## ANALYSIS

Defendants have met their initial burden of proving "that there was an available administrative remedy, and that [Plaintiff] did not exhaust that available remedy." Albino, 747 F.3d at 1172.  Defendants provide ample evidence, including Plaintiff's use of the grievance system and declarations from appropriate prison authorities, establishing that the prison appeal system was available to Plaintiff as an administrative remedy.  ECF Nos. 30-3-30-8. Plaintiff did not provide any contradictory evidence and did not argue that he did not have access to an administrative remedy so the Court finds that there was an available administrative remedy and will consider the individual grievances submitted by Plaintiff and whether they were exhausted.

**A.     SQSP Appeals**

Plaintiff's retaliation claims arise from conduct Plaintiff alleges occurred while he was housed at RJDCF in 2014 and all of the Defendants were working at RJDCF.  FAC at 2-4. With regard to Plaintiff's current custodial sentence, Plaintiff was housed at SQSP before he was moved to RFDCF in May 2014.  Id. at 3-4, 8.  As a result, it seems unlikely that any appeals filed while Plaintiff was housed at SQSP would address retaliation issues that arose at RJDCF but, in an abundance of caution, the Court will address Plaintiff's SQSP appeals.

With respect to Plaintiff's medical appeals, Defendants provide a declaration from M. Almares, a Health Care Appeals Coordinator at SQSP.  M. Almares' position requires that she maintain records of all medical appeals that are filed by prison inmates at SQSP and the computer database ("HCARTS") where those medical appeals are received.  ECF No. 30-5 at 1.  At the request of defense counsel, M. Almares conducted a review of the HCARTS database for health care appeals or staff complaints from Plaintiff "from January 1, 2014 to the present, that were accepted for review, or rejected by this Office, relating

to allegations of retaliation by current Defendants in this action." Id. at 2.  M. Almares's review turned up ten health care appeals submitted by Plaintiff and four of them have a San Quentin identifying number (SQ-HC-14038960 received on March 1, 2014, SQ-HC-14038962 received on March 13, 2014, SQ-HC-14039130 received on April 26, 2014, and SQ-HC-14039155 received on April 29, 2014).  Id. at 4-9.  M. Almares does not provide any information on appeal SQ-HC-14038962 but the printout indicates that it only was submitted at the third level and it was canceled in March 2014.  Id.  The remaining three appeals concern Plaintiff's efforts to obtain single cell status and to have that status determination sent to RJDCF.  Id. at 3-9.  None of the grievances contain retaliation allegations and none of them name the Defendants.  Id. at 2-9.

Defendants also provide a declaration from M.L. Davis, the appeals coordinator at SQSP.  ECF No. 30-3.  The appeals office receives inmate grievances submitted by inmates for the first and second levels of review.  Id. at 1.  In response to defense counsel's request, M.L. Davis conducted a search of the appeals office records and files for any appeals from Plaintiff "from January 1, 2014 to the present, relating to allegations of retaliation by current Defendants."  Id. at 3.  The search revealed that the appeals office received and screened-out five appeals from Plaintiff, none of which "mentioned allegations of retaliation by . . . . Defendants" and that during the time Plaintiff was incarcerated at SQSP, the appeals office did not receive or accept for review any timely appeals from Plaintiff regarding the removal of Plaintiff's single-cell status in retaliation for filing lawsuits.  Id. at 4.

**B.   RJDCF Appeals**

Defendants provide a declaration from D. Van Buren, a Health Care Appeals Coordinator at RJDCF.  ECF No. 30-7.  Like M. Almares, D. Van Buren's position requires that s/he maintain records of all medical appeals that are filed by prison inmates at RJDCF and s/he notes that HCARTS is the database containing all of the medical appeals which are received or screened out.  Id.; see also ECF No. 30-5 at 1.  At the request of defense counsel, D. Van Buren conducted a review of the HCARTS database for health care appeals

or staff complaints from Plaintiff "from January 1, 2014 to the present, that were accepted for review, or rejected by this Office, relating to allegations of retaliation by current Defendants in this action." ECF No. 30-7 at 2.  D. Van Buren's search revealed the same ten complaints discovered by M. Almares.  Id. at 7-9; ECF No. 30-5 at 6-8.  With regard to the six complaints with an RJDCF tracking number, D. Van Buren stated that four requested lower bunk status, eye treatment, and/or visual impairment accommodation (RJD-HC-14051854 received September 4, 2014, RJD-ADA-14002188 received July 23, 2014, RJD-HC-14051442 received July 7, 2014, and RJD-HC-14051194 received May 28, 2014), one requested single cell status (RJD-HC-14051122 received May 16, 2014) and one requested medication (RJD-HC-14051359 received June 23, 2014).  ECF No. 30-7 at 3-9.  None of the appeals contained any allegations of retaliation by Defendants.  Id.

Defendants' evidence also includes a declaration from R. Olson.  ECF No. 30-6.  R. Olson is the appeals coordinator at RJDCF and has access "to responses to inmate grievances issued by" the appeals office.  Id. at 1.  After searching for any appeals submitted by Plaintiff while incarcerated at RJDCF from January 1, 2014 to present day, R. Olson identified the following grievances as relating to or containing allegations that Defendant(s) retaliated, or threatened to retaliate, against Plaintiff for filing a civil suit against them by removing him from single cell status:

- On April 28, 2014, Inmate Appeals Office ("IAO") received a grievance from Plaintiff indicating that he was given permanent single cell status as a result of past trauma and seeking enforcement of that status (RJD-X-14-01526). Id. at 3, 8-9 (Exh. 1).  The appeal was screened out/rejected because it should have been submitted to the Health Care Appeals Office.  Id.  The appeal was forwarded to a member of the health care staff for review.  Id.
- On June 13, 2014, the IAO received an appeal from Plaintiff requesting to be assigned a new counselor and alleging that Defendant A. Nanquil is threatening to house Plaintiff with other inmates when Plaintiff has a valid single cell chrono (RJD-A-14-02115).  Id. at 4, 11-12 (Exh. 2).  The appeal

was screened out/rejected on June 13, 2014 because it was deemed to be an improper appeal and Plaintiff was told "to utilize CDCR Form 22," which "was the proper form for" his request.  Id.

• On June 26, 2014, IAO received a staff complaint from Plaintiff alleging that Defendant Nanquil retaliated against Plaintiff by refusing to process his legal documents because Plaintiff filed a lawsuit against him (RJD-A-14-02374). Id. at 4, 13-21 (Exh. 3). The appeal was screened out/rejected on July 8, 2014[3] because it was missing necessary supporting documents (specifically, the "CDCR Form 22 to CCI Nanquil") and because Plaintiff failed to attempt to resolve the issue via the Form 22 process.  Id. at 4, 13.  Plaintiff did not pursue the matter further.  Id. at 4.

• On June 24, 2014, IAO received a staff complaint from Plaintiff alleging that Defendant Davis threatened to assault Plaintiff and discard his legal materials if Plaintiff continued to disobey direct orders and refuse to be housed with another inmate (RJD-A-14-02384). Id. at 5, 23-30 (Exh. 4).  The appeal was screened out/rejected on July 8, 2014  because it was missing necessary supporting documents (specifically, "CDCR Form 22 to EOP Sgt.") and because Plaintiff failed to attempt to resolve the issue via the Form 22 process. Id. 4, 23.  Plaintiff did not pursue the matter further.  Id. at 5.

• On October 3, 2014, IAO received a complaint from Plaintiff the he had a permanent single cell chrono and during the institution classification committee meeting, Defendant Sanchez refused to honor it and wrongfully denied Plaintiff a single cell (RJD-B-14-03454).  Id. at 6, 45-46 (Exh. 6). Plaintiff asks to have his single-cell chrono reinstated and updated.  Id.  The appeal was screened out/rejected on October 8, 2014 because it was missing

---

[3]The Court notes that R. Olsen's declaration avers that the appeal was screened out on February 8, 2014.  ECF No. 30-6 at 4.  This must be a typographical error as it seems unlikely that the complaint filed on June 26, 2014 was rejected in February 2014.  Moreover, the screening letter to Plaintiff is dated July 8, 2014.  Id. at 13 (Exh. 3).

1    necessary supporting documents (specifically, the "ICC 128G[4] on 6-17-14").

2    Id.  Plaintiff did not pursue the matter further.  Id.

3    **C.    General Review of Third Level Appeals**

4    Defendants also provide a declaration from R. Briggs, the Acting Chief of the Office

5    of Appeals who is able to verify the status of an inmate's third level administrative appeals.

6    ECF No. 30-4.  Defense counsel asked R. Briggs "to locate any and all Third Level Inmate

7    Appeals" that were accepted for review by the Office of Appeals from Plaintiff from January

8    1, 2014 to the present relating to allegations of retaliation by current Defendants."  Id. at

9    4.  R. Briggs's search revealed that there were no third level appeals from Plaintiff.  Id.

10   The computerized printout indicates that Plaintiff attempted to file two appeals for Third

11   Level review but they were screened out or rejected because one was a duplicative filing

12   and the other was an unauthorized attempt to bypass the First and Second Levels.  Id. at

13   6 (Exh. 1).

14   Finally, Defendants provide a declaration from R. Robinson, the Chief of the Inmate

15   Correspondence and Appeals Branch ("ICAB"), whose duties include the oversight of CDCR

16   staff processing of health care appeals submitted by inmates.  ECF No. 30-8 at 1-2.  The

17   ICAB "receives, reviews, and maintains all health care appeals accepted for the third and

18   final level of review in the inmate health care appeals process."  Id. at 2.  At the request

19   of defense counsel, R. Robinson search the HCARTS database for all relevant health care

20   appeals from Plaintiff that ICAB accepted for a third level of review from January 1, 2014

21   to present day.  Id. at 3.  R. Robinson's search revealed:

22   •    Plaintiff filed a health care appeal that ICAB received on June 6, 2014 (RJD-

23        HC-14051122).  Id. at 3-4, 7 (Exh. 1).  The appeal was a request to be

24        placed in a single cell due to Plaintiff's safety and paranoia concerns.  Id.

25        The appeal was accepted for review and denied at the third level of review

26   _____

27   [4] Defendants state that the ICC 128G is a document that summarizes what happened during the institutional classification committee hearing. ECF No. 45-1 at 2. Defendants explain that the completed form

28   is required to be included with any appeal by the applicable regulations and is necessary "because it would show what occurred at the ICC hearing," and would "list all of the committee members, the information they relied on in making their decision, and the basis for any decision."  Id.

on August 22, 2014.  The appeal did not include allegations of retaliation. <u>Id.</u> at 3-4; <u>see also</u> ECF Nos. 30-7 at 11-19 (Exh. 2); 44 at 5-11.

• ICAB received another health care appeal from Plaintiff on October 27, 2014 (RJD-HC-14051854).  ECF No. 30-8 at 4, 6 (Exh. 1).  The appeal concerned Plaintiff's request for a lower bunk chrono and a vest for the visually impaired.  <u>Id.</u>  The appeal was accepted for review and denied at the third level of review on November 25, 2014.  The appeal did not include allegations of retaliation.  <u>Id.</u> at 3-4.

The Court has reviewed all of the declarations and evidence submitted by Defendants and finds that they establish that Plaintiff has not exhausted his administrative remedies as to any of his retaliation claims.  As a result, the burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." <u>Albino</u>, 747 F.3d at 1172.

**D.   Plaintiff's Response**

In his oppositions, Plaintiff merely provides summaries of his efforts to obtain single cell status, his assertion that Defendants refused to honor that status, and his retaliation allegations that Defendants Nanquil and Sanchez were unhappy with the fact that he filed a civil complaint against them and that, in response, they threatened to house him with a known gang member.  ECF Nos. 32 at 2-4; 34 at 2-3; 37 at 2-3.  Plaintiff also asserts that Defendant Davis threatened to send Plaintiff to administrative segregation if he refused to be housed in a cell with another individual.  ECF Nos. 32 at 4; 34 at 3; 37 at 3. The majority of Plaintiff's oppositions is used to argue that he satisfies the legal requirements of a retaliation claim because he suffered an adverse action when exercising his First Amendment rights and that adverse action chilled his First Amendment rights and "did not reasonably advance a legitimate correctional goal."  ECF Nos. 32 at  6-10; 34 at 5-10; 37 at 5-10.  With regard to exhaustion, Plaintiff states that he filed administrative appeals to RJDCF regarding the behavior of Defendants Nanquil and Sanchez, but received

no response.   ECF Nos. 34 at 3; 37 at 3.   Plaintiff contends that he submitted all "reasonably available documentation" and therefore, made "good efforts" to exhaust his administrative remedies.   Id.   However, Plaintiff provides no documentation or specific allegations supporting his claim that he exhausted his administrative remedies. Additionally, Plaintiff makes no claim that he was somehow prevented from exhausting his administrative remedies or that there were no administrative remedies available to him. Id.

Because Plaintiff is proceeding *pro se*, the Court will carefully consider all of the evidence and documents submitted by Plaintiff to see if they support his arguments.   The first document submitted by Plaintiff, which is attached to his FAC, is a letter from the California Correctional Health Care Services, dated May 22, 2014, and referencing inmate grievance SQ-CCU-14000571.   ECF No. 10 at 8.   This letter summarizes Plaintiff's grievance as a request to have his "single cell chrono issued in 2005 be updated and recorded in [his] mental health and medical file."   Id.   The letter advises Plaintiff that his single cell status was a temporary status, returns the "CDCR 602 Inmate/Parolee Appeal and a CDCR 602-A Inmate Parolee Appeal Form Attachment dated February 28, 2014, along with your correspondence," and suggests that Plaintiff "pursue this matter at your current institution."   Id.   This letter does not contain any indication or mention of retaliation by Defendants and does not exhaust the grievance.

The second document submitted by Plaintiff is attached to his December 22, 2014, opposition to summary judgment.   ECF No. 32 at 13-15.   This is a three-page Form 602, dated October 15, 2014 and entitled "Emergency Appeal," in which Plaintiff states that he has a permanent single cell chrono due to his paranoia and safety concerns and asserts that Defendants S. Sanchez and A. Nanquil are refusing to comply with it.   Id.   Plaintiff further alleges that during his classification committee meeting, Defendants Sanchez and Nanquil made statements indicating that they were both unhappy that Plaintiff had filed a civil lawsuit against them and that in response they would take Plaintiff's single cell status away from him and place him in a cell with a gang member.   Id.   Plaintiff also states

that he has "previously submitted two other 602 grievances concerning this matter, however I never received a response." Id. at 15. The document does not contain any official response in the First or Second Level review boxes and the Third Level box contains a stamp dated October 31, 2014 indicating it was rejected. Id. at 13-14.

Finally, Plaintiff submits a set of documents as part of his "Motion of Supporting Documents Showing Plaintiff Exhausted Administrative Remedies." ECF No. 44 at 5-11. These documents reference RJD-HC-14051122 and the cover letter states that the appeal was denied at the Director's Level and "[t]his decision exhausts your administrative remedies." Id. at 5. These documents are identical to the documents discussed by D. Van Buren and attached to that declaration. ECF No. 30-7 at 3, 8, 11-19 (Exh. 2). These documents establish that Plaintiff exhausted his administrative remedies as to this request for permanent single cell status. However, this appeal **does not** contain any retaliation allegations and **does not** exhaust his administrative remedies as to his current claims for retaliation against Defendants. As a result, Plaintiff's evidence does not provide any support for his argument that he exhausted his administrative remedies as to his retaliation claims.

To the extent that Plaintiff is alleging that he submitted 602 grievance forms which were ignored by the CDCR and that, therefore, the administrative appeal process was unavailable to him [see ECF Nos. 34 at 3; 37 at 3; 44 at 3], his argument is not supported by the record. First, Plaintiff does not provide any new 602 grievance forms indicating that he filed grievances which were not processed by the prison. Second, with regard to Plaintiff's retaliation claims against Defendant Nanquil (RJD-A-14-02374), Appeals Coordinators R. Olson and J. Ramirez sent Plaintiff a letter dated July 8, 2014, informing him that his appeal was rejected because it was "missing necessary supporting documents," specifically the CDCR From 22 to CCI Nanquil as Plaintiff "failed to attempt

14CV1296-CAB(BLM)

1   to resolve [his] issue by utilizing the CDCR Form 22 process." ECF No. 30-6 at 14.[5] The

2   letter directed Plaintiff to have his unit officer sign the Form 22 as proof that he attempted

3   to resolve the issue or mail the Form 22 to the intended staff person. Id. The letter stated

4   that if Plaintiff was

5           dissatisfied with [the] response send it to their supervisor; if you are still not
            satisfied with the response, attach it to your appeal and resubmit it to the
6           appeals office for further review.

7   Id. In appeal RJD-A-14-02384, regarding the threats allegedly made by Defendant Davis,

8   Olson and Ramirez sent a similar letter to Plaintiff advising him that his "appeal has been

9   rejected" because it "is missing supporting documents," specifically the "CDCR Form 22 to

10  EOP Sgt." Id. at 5, 24.  Again, the letter states that Plaintiff "failed to attempt to resolve

11  your issue by utilizing the CDCR Form 22 process" and outlined the process that he needs

12  to follow. Id.  Accordingly, Plaintiff has not demonstrated that he was prevented from

13  exhausting his administrative remedies and Defendants' evidence establishes that Plaintiff

14  had access to administrative remedies, was advised of the deficiencies in his documents

15  or submissions and how to correct them, and yet failed to do so.

16          While Plaintiff does not argue that his retaliation appeals were improperly rejected,

17  the Court has considered the potential issue and finds they were not.  In the rejection

18  notices, Plaintiff was directed to utilize "the CDCR Form 22 process" and to have his unit

19  officer sign the Form 22 as proof that he attempted to resolve the issue or mail the Form

20  22 to the intended staff person.  ECF No. 30-6 at 14, 24, 45-46.  Plaintiff was also

21  informed that if he was dissatisfied with the response after utilizing the process, he could

22  resubmit the appeal for further review. Id.

23          Courts have found that requiring inmates to proceed with the Form 22 requirement

24  is appropriate and permissible. See Coleman v. Hubbard, 2012 WL 3038571, *9 (E.D. Cal.,

25  July 25, 2012)(finding that return of plaintiff's submitted 602 for lack of specificity and with

26

27          [5]Plaintiff filed another retaliation grievance against Defendant Nanquil (RJD-A-14-02115).  ECF No.
    30-6 at 4, 11-12 (Exh. 2).  In rejecting this grievance, the Appeals Coordinators stated "Be advised that these
28  documents are being returned to you as they are not an appeal.  *A request is not an appeal.  You need to
    utilize the Form 22 for requests." Id. at 11.

14CV1296-CAB(BLM)

instruction to first exhaust the Form 22 process was appropriate and noting that "[w]hile the court has found no explicit authority to support the rejection of an inmate's grievance filed pursuant to CDCR Form 602, for failure to first submit and exhaust a CDCR Form 22, pertinent regulations appear to support this requirement at the discretion of the reviewing official" and that "[a]lthough CDCR's new Form 22 appears to accord substantial discretion to prison officials to decide whether to require a prisoner to complete the Form 22 process before accepting a related Form 602 appeal, such discretion appears to be authorized by the Department's regulations."); see also Ortega v. Ruggiero, 2013 WL 268905, *6-7 (E.D. Cal., Jan. 23, 2013)(concluding that the rejection of plaintiff's second and third level inmate appeals at the first level of review was proper and that plaintiff was not prevented from pursuing his appeals where the appeal coordinator directed plaintiff to submit a Form 22 and plaintiff failed to do so.  Also noting that "title 15, § 3086(e)(2) of the California Code of Regulations, specifically authorizes an appeals coordinator to reject an inmate appeal with instructions to complete the request form process before resubmitting an inmate appeal"); McCoy v. County of Riverside, 2015 WL 134285, *4, fn 5 (C.D. Cal. Jan. 9, 2015)(noting that "[a]lthough prisoners are not required by regulations to submit a Form 22 as a prerequisite to a Form 602 appeal, CDCR's regulations accord substantial discretion to prison officials to decide whether to require a prisoner to complete the Form 22 process before accepting a Form 602 appeal.") (citing Coleman, 2012 WL 3038571 at *9, Cal.Code Regs. tit. 15, § 3084.3(a) and § 3084.3(c)); and Witkin v. Swarthout, 2015 WL 471780, *8 fn 3 (E.D. Cal. Feb. 4, 2015) (same).

Here, Plaintiff is proceeding forward only on his retaliation claims.  Plaintiff filed three grievances asserting his retaliation claims.  All three were returned to Plaintiff at the First Level of review with instructions to utilize the Form 22 process first.  Plaintiff failed to do so and never filed another 602 grievance asserting his retaliation claim.  The only grievances which Plaintiff fully exhausted via the administrative review process involved medical issues, not retaliation.  As a result, Plaintiff's retaliation claims are not exhausted and therefore must be dismissed.  Porter, 534 U.S. at 524; Jones, 549 U.S. at 211;

Woodford, 548 U.S. at 85, 100.  Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED.**

**II.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT [ECF No. 36]**

On January 13, 2015, Plaintiff filed a document entitled "First Amended Complaint." ECF No. 36.  The Court interpreted the document as a motion for leave to file an amended complaint and the motion was accepted on discrepancy on January 21, 2015 by Judge Bencivengo.  ECF No. 35.

**A.    Legal Standard**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading after the opposing party has served a responsive pleading "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Upon motion to the court, "[t]he court should freely give leave when justice so requires."  Id.  "This policy is 'to be applied with extreme liberality.'"  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).

The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  In assessing these factors, the consideration of prejudice should carry the greatest weight.  Eminence Capital, 316 F.3d at 1052.

**B.    Discussion**

A review of the motion to file a first amended complaint, which would actually be Plaintiff's Second Amended Complaint ("SAC") if accepted, reveals that Plaintiff is relying on the same facts asserted in the FAC to state two First Amendment claims for retaliation and for interference with his constitutional rights (Bane Act violation).  ECF No. 36.  In the SAC, Plaintiff again alleges that Defendants Sanchez and Nanquil threatened to retaliate

against Plaintiff because he filed a civil case against them and Defendant Davis threatened to retaliate against Plaintiff because he refused to be housed with a cellmate.  Id. at 3-5.  The proposed SAC includes additional factual allegations about an inmate who approached Plaintiff two weeks after Defendant Sanchez allegedly told Plaintiff that she would house him with a known gang member and that it would be Plaintiff's responsibility to take care of himself.  Id. at 3-4.  Plaintiff alleges that the other inmate offered to room with Plaintiff and then promised to speak with the housing unit officer when Plaintiff refused.  Id. at 4.  As the inmate left, "he threw up a gang sign" at Plaintiff.  Id.  The proposed SAC also omits the claim that Plaintiff is being denied mental health care services and no longer names Dr. Williams as a defendant.  ECF No. 36.

Because Plaintiff's proposed SAC only contains claims based on the alleged retaliation outlined in the FAC and because this Court has found that those allegations and claims are not exhausted, the Court finds that filing the SAC would be futile.  See Foman, 371 U.S. at 182 (finding that a district court may deny leave to amend due to futility of amendment); see also Ibarra v. Hedgpeth, 2013 WL 5969667, *1 (E.D. Cal. Nov. 8, 2013) (stating that "[f]utility alone is a sufficient basis to deny a motion to amend" and "[a]mendment is futile if the statute of limitations has run, the claims are unexhausted, or the legal basis for the claims are tenuous") (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995); Rodriguez v. U.S., 286 F.3d 972, 980 (7th Cir. 2002); and Casewell v. Calderon, 363 F.3d 832, 837, 839 (9th Cir. 2004)).  The Court, therefore, **RECOMMENDS** that Plaintiff's motion for leave to amend his complaint be **DENIED**.[6]

## **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation,

---

[6]On January 11, 2015, Petitioner submitted a second document entitled "First Amended Complaint," which the Court received on February 2, 2015.  The Clerk's Office prepared a Notice of Document Discrepancy for the document.  The "First Amended Complaint" document, with the exception of the date it was signed, is identical to the "SAC" at issue in this motion to amend.  Because the Court is recommending that Plaintiff's motion to amend be denied and because the two documents are identical, the Court **REJECTS** the second document and **ORDERS** that it be returned to Plaintiff.

14CV1296-CAB(BLM)

(2) **GRANTING** Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.; and (3) **DENYING** Petitioner's Motion to Amend the Petition.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **May 1, 2015.** The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 22, 2015.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 2007).

**III.   MOTION TO BE TEMPORARILY TRANSFERRED TO ANOTHER INSTITUTION [ECF No. 43]**

On January 11, 2015, Petitioner filed a "Motion for Plaintiff to be Temporarily Transferred to Another Institution Pending Defendant's Motion Hearing." ECF No. 43. In the motion, Plaintiff alleges that Defendant R. Davis "is currently imposing retaliation, threats of harm, and harassment upon plaintiff in order to intimidate plaintiff to abandon his civil lawsuit." Id. Plaintiff alleges that he fears for his life and safety in his current facility. Id.

The Court does not have jurisdiction to order Plaintiff to be transferred to another facility. See Sharma v. Johnson, 2014 WL 2769139, * 4 (E.D. Cal. June 18, 2014) (construing portion of petitioner's civil rights complaint for a prison transfer as a habeas petition brought under 28 U.S.C. § 2241 and denying the request for transfer where the "court lack[ed] jurisdiction to order the petitioner's transfer to another prison [because] Title 18 U.S.C § 3621(b) gives the BOP authority to 'designate the place of the prisoner's imprisonment' and the discretion to 'direct the transfer of a prisoner from one penal or correctional facility to another.'" Also noting that "Title 18 U.S.C. § 3625 prohibits judicial review of 'any determination, decision, or order' that the BOP makes under 18 U.S.C. § 3621") (citing Tapia v. United States, ––– U.S. ––––, 131 S.Ct. 2382, 2391-92 (2011) and

Reeb v. Thomas, 636 F.3d 1224, 1227–29 (9th Cir. 2011) ("Although judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority," review of the BOP's discretionary decisions regarding an individual inmate's place of incarceration falls outside federal courts' subject matter jurisdiction)).  In addition, it appears that Plaintiff already has been moved to another facility.  See ECF Nos. 58 & 62 (change of address notice).  Accordingly Plaintiff's motion for temporary transfer is **DENIED**.

## IV.    MOTION FOR COPY OF CIVIL COURT DOCKET [ECF No. 49]

On February 10, 2015, Plaintiff submitted a "Motion to Request Copy of Civil Court Docket of Plaintiff's Civil Complaint" which was accepted on discrepancy and filed on February 18, 2015.  ECF Nos. 48 and 49.  In the motion, Plaintiff requests a copy of the civil court docket to confirm that all parties have received all "pleadings, motions, and/or documents" filed by Plaintiff.  Id. at 2.  In support, Plaintiff alleges that the motion is necessary because his outgoing legal mail is "being tampered with by prison officials."  Id. at 1.  Plaintiff describes the process for inmates to post confidential mail and cites to CDCR Title 15, United States Code, Section 3142.  Id. at 17.

Good cause appearing, Plaintiff's motion is **GRANTED**.  The Clerk's office is **ORDERED** to mail Plaintiff a copy of the docket in this matter so that he can see all of the documents that have been filed.  To be clear, the Court is ordering that Plaintiff only receive a copy of the docket, not a copy of the actual pleadings that have been filed and appear on the docket.

## V.    MOTION TO STAY DISCOVERY PENDING MSJ [ECF No. 52]

On February 25, 2015, Defendants filed an "Ex Parte Application to Stay Discovery." ECF No. 52.  Plaintiff filed his opposition to the motion on March 6, 2015.  ECF No. 57. Defendants were ordered not to file a reply.  ECF No. 53.

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression,

or undue burden or expense." Federal Rule of Civil Procedure ("FRCP") 26(c)(1).

Defendants seek to stay discovery in light of the fact that on January 26, 2015, Plaintiff served Defendants with Requests for Production of Documents despite the fact that the Court has not issued a scheduling order or formally opened discovery. ECF No. 52-1 at 3. The requests seeks employee files, disciplinary files, other complaints and grievances filed against Defendants, and documents admitting to previous lies about instances of excessive force and retaliation. Id. at 3. Defendants argue that since Plaintiff's discovery does not relate to the exhaustion of his retaliation claim, the requests are not relevant to the pending summary judgment motion. Defendants explain that delaying merits discovery until after the summary judgment motion is decided will promote judicial economy, will prevent undue burden and expense by Defendants, and will not prejudice Plaintiff since there are no deadlines currently set in the case. Id. at 4.

In his opposition Plaintiff states

> Defendants argues [sic] that plaintiff has failed to show that he exhausted all administrative remedies made available to him concerning his retaliation claims against defendants. Plaintiff submitted all reasonably available documentation showing he demonstrated good efforts to file and exhaust administrative remedies, however, the appeals coordinator's office were [sic] negligent in responding to plaintiff's grievances in which he never received a response concerning the threats of harm and retaliation incident committed by the defendants. And since the California Department of Corrections and Rehabilitation intentionally refused and ignored plaintiff's grievances he had no other alternative but to file a civil complaint with the district court. There is no other prescribed method of departmental review or remedy available to plaintiff. Plaintiff's life and safety was [sic] threatened and was [sic] retaliated against by defendants in response to his civil lawsuit to the U.S. District Court, Southern District of California. Therefore, for the reasons stated above, plaintiff's opposition to defendant's ex parte application to stay discover[y] should be granted and prays that the judgment will be entered in favor of Plaintiff against Defendants.

ECF No. 57 at 2-4. Plaintiff does not otherwise address Defendants' arguments in support of the stay or assert that Defendants' arguments are factually incorrect or lacking in good cause.

Here, Defendants have demonstrated good cause for staying discovery until a final ruling has been issued on the pending MSJ. In addition, as set forth in the Report and

Recommendation, the Court is recommending that Defendants' motion for summary judgment be granted and Plaintiff's motion to amend be denied so merits discovery may never be required.  Accordingly, Defendants' motion to stay all discovery is **GRANTED**. See Albino, 747 F.3d at 1170 (stating that "[i]f discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery directed to the merits of the suit").  The Court will open discovery, if necessary, after the District Judge has ruled on the pending Report and Recommendation for Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion to Amend.

## VI.    REQUEST TO SUBPOENA WITNESSES FOR TRIAL FOR CIVIL JUDICIAL PROCEEDINGS [ECF NO. 56]

On March 1, 2015, Plaintiff submitted a "Request to Subpoena Witnesses for Trial for Civil Judicial Proceedings" in which he asks the Court to compel the appearance of three witnesses "to testify to such facts at plaintiff's civil judicial proceedings and give evidence before the Court."  ECF No. 56.  Plaintiff identifies the three witnesses by name and position (two RJDCF inmates and an RJDCF Mental Health Clinician) but does not provide any information regarding the facts or topics to which the individuals would testify. Id. at 2.   For the reasons set forth below, Plaintiff's motion is **DENIED**.

First, the Court has not issued a scheduling order or formally opened discovery and, as discussed in the previous section, discovery in this matter is stayed until a final ruling has been issued on the pending MSJ and the Court opens discovery.  As such, there is no trial or other hearing for which the witnesses could be subpoenaed.

Second, the identified witnesses do not appear to have knowledge or information relevant to the pending motion for summary judgment, which is the only issue currently before the court.  In his motion seeking a copy of the court's docket, Plaintiff attaches a health service request in which he alleges that Inmate Brown, one of the individuals named in this subpoena request, has been harassing him about his running water and Plaintiff alleges that it is related to the pending civil suit. ECF No. 49 at 10 (Exh. B).  The clinician

who met with Plaintiff to discuss the allegation against Inmate Brown is the same clinician named as a potential witness in this motion.  Id.  As such, there is no evidence indicating that any of the identified individuals have information relevant to the pending motion and Plaintiff's exhaustion or non-exhaustion of his administrative remedies.  This conclusion is supported by the fact that Plaintiff requests that the witnesses be subpoenaed for "trial" and if "Defendant's summary judgment motion is denied."  ECF No. 56 at 2.

## VII.   REQUEST FOR APPOINTMENT OF COUNSEL [ECF No. 61]

On March 1, 2015, Plaintiff filed a "Request for Appointment of Counsel" asking "that counsel be appointed in this matter so that my interests may be protected by the professional assistance required."  ECF No. 61 at 1.

The Constitution provides no right to appointment of counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation.  Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 25 (1981).  However, under 28 U.S.C. § 1915(e)(1), courts are granted discretion to request *pro bono* counsel for indigent persons under "exceptional circumstances."  Agyeman v. Corr. Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004).  A finding of exceptional circumstances demands at least "an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'"  Id. (quoting Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Thus far, Plaintiff has drafted and submitted several pleadings, notices, and motions without the assistance of counsel.  In addition to the instant motion, he has submitted a complaint [ECF No. 1], exhibits [ECF No. 5], motion for leave to proceed *in forma pauperis* [ECF No. 6], letter with attachments [ECF No. 8], first amended complaint [ECF No. 10], second motion for leave to proceed *in forma pauperis* [ECF No. 13], letter with exhibit [ECF No. 15], notice of consent to magistrate jurisdiction [ECF No. 18], motion to proceed as to retaliation claims only [ECF Nos. 21 & 23], three responses in opposition to Defendants' motion for summary judgment [ECF Nos. 32, 34 & 37], two motions for leave to file an amended complaint [ECF No. 36], motion for extension of time to submit supporting

documents [ECF No. 39], Notice of Appeal to the Ninth Circuit [ECF No. 46], motion and declaration under penalty of perjury in support of motion to proceed in forma pauperis on appeal [ECF No. 47], supporting documents showing exhausted administrative remedies [ECF No. 44], motion for temporary transfer [ECF No. 43], motion requesting a copy of the civil court docket [ECF No. 49], request to subpoena witnesses for trial [ECF No. 56], opposition to Defendants' motion to stay discovery [ECF No. 57], and a notice of change of address [ECF Nos. 58 & 62].

From the Court's review of these documents, it is clear that Plaintiff is able to articulate the claims of his case.  Moreover, the Court has recommended dismissal of Plaintiff's claims so he cannot demonstrate a likelihood of success on the merits. Agyeman, 390 F.3d at 1103; see also Wilborn, 789 F.2d at 1331.  Because Plaintiff has not established the requisite "exceptional circumstances," the Court **DENIES** Plaintiff's request for appointment of counsel.

**IT IS SO ORDERED.**

DATED:  April 2, 2015

BARBARA L. MAJOR
United States Magistrate Judge

14CV1296-CAB(BLM)